Case number 23-1902 Richard Wershe Jr v. City of Detroit MI et al. Argument is not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. Mr. Ayad, you may proceed for the appellant. Good morning, Your Honor. Good morning. Your Honor, all parties to the court have applied to the Prison Affair Retaliation Doctrine derived from Davis v. Jackson. A plaintiff addressed this... I can already tell you I'm having trouble both hearing and understanding you.  Yeah, I can't hear you either. If you could... Maybe bring the podium up or something or speak more clearly and loudly? Is that the speaker right here? Pardon me? Is that the speaker here? It shows that it's red. I don't know if it's on or not, but... If you could just try to speak a little louder. Okay, I will do that. Thank you. All parties to this case basically have applied the Prison Affair Retaliation Doctrine as derived from Davis v. Jackson. Plaintiff addressed the statute of limitations in his original July 2021 verified complaint. The district court relied on Davis because neither the Sixth Circuit, quote, neither the Sixth Circuit nor the Michigan courts have directly addressed the issue of equitable tolling due to the fear of retaliation. The reasoning in Davis is persuasive, as the court said in the lower court. I don't understand who he feels was going to retaliate against him. Because at least one of the defendants, as I understand it, is the one that actually engineered putting him into protective custody. So somebody couldn't retaliate against him. So who does he say would retaliate against him? As we alleged in the complaint, Your Honor, it would be the defendants by their influence as they've done in the past. And we listed about 14 factors that they've done in the past. You can't just name a whole group and say, well, the defendants. So you're saying every single one of these defendants either did or he feared they would do something to harm him. Absolutely, Your Honor. And what did they do? Well, what they did, as we listed in our complaint, Your Honor, we had when Nate Boone Kraft was a hitman in Detroit, he was hired by Gil Hill, the chief of police at the time, gave him $10,000 to put a hit on white boy Richard Wershey. That's the city of Detroit. That's Detroit. That's one of the defendants with the influence that they have. The mayor of Detroit called him a stool pigeon, basically as an informant and obviously to the public. Do you have any evidence of this, of any of what you've said, other than your client's opinion? Oh, absolutely. It's all these individuals are there. Mr. Rice is there. Nate Boone was there. The hitman. It's all in the documentary that the court, you know, if we conducted discovery, you'll be able to see all of that. And the court was to take everything we said was true. A documentary has no evidentiary value whatsoever. Well, it is, but if we are allowed, then she's supposed to take what we say is true on a 12B6, Your Honor. We're not supposed to take as true something you attach as a documentary. No, but we did say that in our complaint, in the body of the complaint, Your Honor. We did say that, and the court was to take it as true. Instead, she basically decided in a sense like a Rule 56 motion, taking some evidence from the defendants, no evidence from the plaintiffs. And I can go on, Your Honor, as to all the incidents that basically that he's three assassination attempts. They reneged on their deal. What they told him, you come testify to help put this dangerous gate behind bars and corrupt police officers behind bars, which he did. And then exposed it when he went out in 2003 to his parole board hearing. So, and we listed, there's 14 actually allegations that this happened to him. His own attorney that defended him on the criminal case when he worked for the prosecutor's office sent a letter saying he should never be released out of jail. I don't even understand how he was not disbarred for this kind of conduct that was conducted by this former attorney of his, this criminal defense attorney. Do you have any case that supports the arguments you're making other than a Southern District of New York case that's not binding on us? Well, Your Honor, I think the parties and the full case law behind it, that the parties agreed to it. We had agreed that this is the binding law on it. All parties agreed to this. Well, what's binding law? Davis versus Jackson? Well, it's not binding, Your Honor, but the parties have stipulated that is the law and that is the persuasive law that they're going to adopt. And that's what the judge ruled on under that particular case. Where do I find that stipulation? Well, I'll tell you right now, Your Honor. Under the, it applied in the motion to dismiss R34 page ID 452 and as well in the oral arguments on July 19, 2023. The Detroit defendants and the United States concurred in those oral arguments to the Bivens-Defendants-Davis arguments. And the judge basically ruled, as I indicated earlier, that's basically, as she finds, is persuasive. We kind of, there was, that was what the arguments went upon. That's what we relied on. And then we also put Clark versus Hanley, Your Honor, a Second Circuit Court of Appeals. And what it specifically says, which is really at the heart of the issue, what the federal judge ruled upon, quote, even if the source of the prisoner plaintiff's fear was a non-defendant. That's exactly what the issue. Your Honor, this district court judge applied the. Okay, so the answer is you're relying upon a district court decision in New York and a Second Circuit decision, right? That is correct. That's all I wanted to know. And this is where the law is headed in this circuit, Your Honor. There's a number of cases that seem to adopt that, and we put those cases in our briefing as well. In its order, the district court correctly ruled that plaintiff's fear of retaliation arose from specific and particularized allegations, yet then erroneously ruled that the fear could not constitute the exceptional circumstances element defined by Davis. Plaintiff alleged and consistent with the holding Davis, he suffered from reasonable fear of retaliation based on actual threats and instances of retaliation. I apologize for continuing to interrupt you, but what's confusing me is what are you reading from? Are you just reading from a script you have, or are you reading from something that's authoritative like a case or a brief? Your Honor, we listed the cases in our brief. I'm just asking you, what are you reading from? What am I reading from now? Yeah. I'm reading from basically the decision of the district court. Okay. That's what I wanted to know. Thank you. Thank you. So you concede that your client's claims are barred by various statutes of limitation, and you only can proceed if you're provided with additional time based on equitable tolling. Is that right? Absolutely, Your Honor. We've said that early on in the top of the complaint immediately. We realize that, and we would not bring a case that we didn't feel that that is where the law is going, the law has been addressed. And even in this circuit, the five-factor test that's been adopted, as well as the Supreme Court ruling, that look at extraordinary circumstances that will toll, equitably toll, the statute of limitations. And I think there's no one, I don't know a case of anything more extraordinary circumstances than Richard Wershe's case. The longest serving, in his entire life, 32 years and seven months he's served. Youngest FBI informant in the history of this nation. Longest serving state prisoner in the state of Michigan. And again, all because these individuals decided to conspire against him and keep him in jail. They didn't want it public, that a 14-year-old was being given money and drugs and wanted by our government, by the FBI. So you mentioned the five-factor test. Yes, sir. So if I thought that applied for your Federal Tort Claims Act claims. Yes. Why does that apply for your 1983? Why does that apply to your 1983 claims, for your Bivens claims? Well, I think it's the same tolling. Why do you think it's the same? Because I think he was unable to bring them. There's an equitable tolling. Why does that five-factor? Assuming I agree with you that it applies to FTCA claims, what case says that we use that same test for claims under 1983 or Bivens? Don't we look to state law in that context for tolling purposes? Yes, sir. Give me just one second, please. We do have a Western District, Michigan case that basically addresses Insango v. Brendan, again indicating that individuals that were actively recruited by other prisoners to physically harm a person could be considered more than just mere allegations of fear, retaliation, rising to the level of— I don't know. What does that case say about the five-factor test and whether the five— I thought we looked at state law. We looked to see whether Michigan has equitable tolling. They do have in certain circumstances, but we don't use that. I don't think we use the same analysis for those claims. I just worry about merging them and creating bad law if we're using the wrong test. Yes, sir. Just give me one second. We do have a case law that we submitted in our brief, Your Honor, that basically if there is no state law as to the equitable tolling effect, federal law, you apply the federal law standard. Isn't there a Michigan law? Doesn't Michigan have law on equitable tolling if they have some exceptions by statute? They do. They only have—there's a newly written law as to— If you have rebuttal time, you can do this in rebuttal. I don't— We have Hardin v. Strug basically says— What court announced that decision? That's a U.S. Supreme Court basically that holds that you use federal equitable tolling when there is no state or is inconsistent. But I think there is state equitable. I think there are state rules. We didn't focus so much on that, but Your Honor, as to the state— If you want to do it on rebuttal or something, it looks like you have more. Yes, Your Honor. I appreciate that. Thank you. I see you're out of time, but there are various dates from which your client should have filed or brought his claims if he was entitled to do that. And maybe you just want to rely upon your brief, which is fine. But this morning, you've not been specifically addressing the dates and the tolling that would be justifiable with respect to the various dates from which your statutes of limitations would begin to run, such as, for example, the 2003 pardon hearing, the circumstances giving rise to equitable tolling there if you were entitled to it. It might differ from the other date, 2017, when he was released from prison. If you want to argue that the statute of the time should have been tolled until he got out of prison, you've just been speaking generally. Or in the mid-1980s, maybe he would have been compelled to bring his claims then as a juvenile informant. But you've not been speaking specifically about these various dates and equitable tolling with respect to each. Is that because you simply want to rely on your brief, your written brief, for those things? Your Honor, the law in the State of Michigan changed in 1993. Technically, he had until April of 1995 to bring the statement when the law changed as to that particular. He was still in jail. After that, from 1996, Your Honor, to 2005, he was in the Federal Witness Protection Program. Before, again, the only government believed he was a fear of basically his safety concern up to 2005. In 2003 was when the parole hearing happened. That's when we feel the new causes of action against the AUSAs and others that were involved in the FBI that came and really done their deal. They promised all these things as our allegations have put forward in our complaint, Your Honor. Then in 2017, Your Honor, he was put in the hole in Florida. On our complaint, we addressed that. The city of Detroit called law enforcement down in Florida and said, make sure you do everything you could to keep him in prison. We've said that with our allegation and our complaint. In Florida, they put him in the hole, Your Honor, for 15 months. Mandatory, they're supposed to be 30 days. Put him in the hole for 15 months, and then they finally threw in the line to charge his mom and sister before he took the plea. He took it continuously, and he didn't bring this action until he was finally out of prison. We put all the allegations and the affidavits in our complaint. As prior two attorneys have told him, that you will never see daylight out of it. Basically, they either possibly kill you or they'll keep you in prison if you bring an action. And again, the difference in actions about they indicate, oh, there's other three losses. All those other three losses were simply just for the fact of trying to get out of prison. And when the Supreme Court changed the law, he was still in prison. Soon, just the parole board to get out of prison. There was no money. Soon, there was no challenge of abuse of process by any individual defendants. They were not put to the monetary test, any of these defendants. And we did, Your Honor, put in depth in our briefing as to those dates that Your Honor is asking about. All right. You'll have your rebuttal time. Yes, sir. Good morning. May it please the Court. John Annam on behalf of the four Bivens defendants, Groman, Dixon, the two former FBI agents, and King and Holland were the two former assistant U.S. attorneys. I want to amplify two central points on behalf of the four Bivens defendants. The first point is the district court properly held that by every measure, Wershe is not entitled to equitable tolling of the three-year statute of limitations. The second point, even aside from the time bar, Wershe's factual and legal claims against the four Bivens defendants fail on multiple other grounds. And the third point I would just briefly like to address is that these factors show that this appeal is frivolous. It was frivolous when the complaint was filed, it was frivolous, and the appeal is frivolous by every measure. That's why we sought Rule 38 sanctions. So let me first go to the tolling issue. Wershe's main rationale for equitable tolling is his argument that is based on naked assertions and mere conclusions, and those are the terms of Iqbal, the 12B6 case, which in fact was a Bivens case. You might want to specify what time frame of tolling you are referring to and with respect to which defendants. Yes, Your Honor. As to, depending on the claims, Mr. Wershe wants to toll the statute of limitations as to the two former FBI agents from 1984 until he filed the complaint. The district court referred to that as the 32-year inaction period that he wants to toll. The other period is 21 years. In 2003, Mr. Wershe was up for parole, and he claimed, contrary to the transcript at the parole hearing, that the FBI agents tried to seek his permanent incarceration, and he claims, contrary to the record evidence put in the case, that the assistant U.S. attorney somehow stopped it, Mr. Helen. So he seeks a 21-year delay for those. There is no basis for a tolling of that period. I'm going to correct one point among many that I believe counsel for Mr. Wershe misstated. We didn't stipulate to the law. We didn't stipulate that Davis governed. First of all, attorneys and parties can't tell the court what law applies. We simply did what all lawyers do. We took his arguments and said, assuming arguendo that Davis applied, we showed by every measure that his argument was meritless. What we wanted to point out was that all Mr. Wershe says is that he claims that it was obvious and certain, he concludes, that if he somehow complained about being an informant or about the FBI agents not testifying on his behalf, that if he did that, he would be, quote, attacked or killed. All right? And we repeatedly pointed out there's not a specific allegation as to each individual defendant as to what they said or did. They did no such thing. The complaint makes no such allegation. What Mr. Wershe and his counsel say is, quote, all the stuff that happened. At the district court, the judge gave counsel for plaintiff ample time. They kept asking, give me specific facts as to what each individual defendant did wrong. Where's the threat? Give me something. Nothing. Zero. Zilch. It was a frivolous argument then and it's a frivolous argument now. None of the defendants, the Bivens defendants, made any such threats. In fact, if counsel had reviewed the record in this case, because Mr. Wershe, while he's claiming he was afraid of these poor Bivens defendants, was suing federal officials in the eastern and western district. He sued the warden. He sued for habeas corpus. So what we did is we went back and we looked at the record of which he was party to. And in that record, you see the transcript of the parole hearing, which he cites, refers to, but doesn't attach. And it shows in there that the FBI agents actually advocated for his early parole. So virtually everything that is in the complaint is false. But even if you assume it's true, there's nothing that shows he had a reasonable fear. Mr. Wershe wants to argue to this court a subjective fear. He says, quote, in my mind, I was fearful. Because the law enforcement in general. He lumps together all these defendants, two former FBI agents, two former assistant U.S. attorneys, and a bunch of city of Detroit officials and says, it's in the air. We all knew it. That is not a standard that any court would accept. That's not ICPO. That's not 12B6. And that's surely not a Bivens case. So when you look at that, there was no objective fear, unlike the Davis case, where at least there was a prison official or a prison guard who threatened the individual. If you raise a complaint, you know, I will do something to you. None of that happened here. In fact, the evidence shows that he was placed in federal protection by the very defendants he sues. It's truly unbelievable that he sues these four former officials, federal officials. So he has no reasonable fear. And he also does not even attempt to address the prejudice to the defendants factor. Tolling is a concept under federal law, and the factors are well known or generally understood. You have to show no prejudice to the defendants. He doesn't even talk about it. Oh, we can go back to 1984 and 1985 as to what was said and done. We can go back to 2003. One of the defendants is dead, Mr. Dixon, an FBI agent. Mr. Dixon's last contact with Mr. Wershe was in 1984. And Mr. Wershe sues his widow, didn't even bother opening an estate in order to bring a claim. Yet he continues to maintain the widow, Ms. Dixon, as a defendant. You just said that the tolling is controlled by federal law, not state law? Yes. Why? Well, I think here it's a Bivens case, and that's why. I think Bivens would apply the tolling principle. We don't look to state law for tolling principles? Well, I think tolling is an equitable principle, and I think this court would apply. There's cases we cite in the brief, Holland and Zapponi, that just apply the equitable tolling principles. For us, for the Bivens defendants. Which equitable tolling principles do they just apply? I believe they're federal principles, Your Honor. Isn't the law pretty clear that we look to state law first on tolling for these claims? Not for the FTCA claims, but for the claims against your clients. I thought I was pretty clear about that. Then you could say, well, maybe state law doesn't have some kind of tolling. It's not sufficient. No, Your Honor. I mean, courts have applied, in various contexts, equitable tolling. But I don't think the principle— I don't know what that means. Courts have applied in various contexts. Are you talking about Bivens cases? Well, it rarely comes up in Bivens cases, but I'm talking about it in other contexts. Well, Your Honor, whatever— It's not under any standard, I get it. But I just want to get the standard right. Okay, you're right, you're right. If I could go to one other thing. Factually, Mr. Wershe did nothing about his fear, right? He took no action to alert any federal officials about it. So we believe that for these and other reasons addressed in our brief, his statute of limitations bars his claim. And about the only thing that is accurate or accurate in the complaint is that he says, my claim is time-barred, and I can only get around it by some equitable principle. The other point I'd like to briefly address is, we have multiple grounds setting aside statute of limitations. There is no Bivens claim. This Supreme Court has rejected any extension of Bivens since 1980. There's only three narrow circumstances where Bivens applies. And it's very narrow. This Court recently said, unless you fit within the facts of those cases, we are not going to apply. Bivens has been rejected 12 times, any expansion of Bivens to those three cases, has been rejected 12 times by the Supreme Court since 1980. Bivens essentially is almost dead unless you fit those narrow confines. Yet he somehow ignores that. He also ignores the basic principle of heck. A Supreme Court case that says a plaintiff... You're taking some liberties here with, I think it was Alito's opinion, most recent opinion on the whole question of the scope of Bivens. What he said, as I understand it, is if it doesn't fit within one of those three existing categories, it doesn't mean it's impossible. It just means at that point you go on to what is essentially a special factors counsel's hesitation test that the Court is then required to apply. So I think, just to be technical here, you're skipping a step. Your Honor, I may be oversimplifying it. There's a lot of nuance I understand to the Bivens. My only point is the alleged claims he makes, whether he calls them Bivens, they're not recognized in any context. They fail to state any basic claim. The other point was under heck. Before a plaintiff can challenge or seek damages for a conviction or sentence, the underlying sentence must be vacated. This is a State Court conviction. It's never been vacated. Yet, in essence, it's trying to get around heck. So we have multiple issues of causation. We have multiple issues of Bivens. We have multiple issues of immunity. And for all these reasons, we believe that there was no possibility of success on the appeal. And all counsel for- The Court didn't reach any of these other arguments. No, Your Honor. Why would we want to reach them? If we found the statute was told, why would we want to reach those as opposed to sending it back? If it was told? If we found the statute of limitations was told by equitable tolling, why would we reach all these other things that you've been arguing about as opposed to sending it back to the District Court to address them? Because, Your Honor, I believe the Bivens and immunity arguments we make, that this Court has the ability and jurisdiction to decide them, and rather than send it back, you would want to address these alternative grounds. I mean, we argue these points very extensively. So if for some reason you say it's told, we believe as to the four Bivens defendants, under Sixth Circuit law, you can address alternative grounds. And I believe the alternative grounds are very solid, and so I would ask the Court to address it. And I would point out that Mr. Wershe really ignores all these alternative grounds and suggests, oh, in fact, he suggests the Bivens counsel has engaged in some type of misconduct by arguing alternative grounds to this Court. So we believe for all those reasons that his claim lacks merit in the appeal is frivolous. All right. We'll hear from counsel for the City of Detroit and other defendants. I'm going to be exceedingly short, Your Honors, as I think you recognize all of the issues. Do you have any thoughts on the legal question I've raised about how we, what equitable tolling principles apply? Yes. A 1983 case doesn't have any statute of limitations, so all the case law says you have to look to the state for the statute of limitations. MCL 600.5851. There has never been a case that has found in favor of equitable tolling. So there is no basis. While the plaintiff says we agreed that Davis is the law of the case, we have never agreed that Davis is law of the case. Our first argument in our brief is there is no equitable tolling. Davis does not apply. Under MCL... Are you looking to Michigan law to figure out what the tolling principles are that we apply? Yes. And the only... You'd say they don't apply here. They don't save the claims here. Equitable tolling has no application to the 1983 cases because you're looking to MCL 600.5851, and no case has ever found equitable tolling under the Michigan statute of limitation laws that have to be applied here. And the only other point I have, just to be quick, is he indicated that the city of Detroit called down to Florida. The city of Detroit, that's not even the allegation. Wayne County allegedly called down to the Florida prison. Wayne County and the city of Detroit are not the same thing. District Court recognized that and stated that in its opinion. And other than that, if you have any questions, I'm going to wrap it up. All right. Thank you, Your Honors. Any rebuttal? Yes, Your Honor. Your Honor, for the record, the counsel that asked for sanctions, we filed our own motion for sanctions against him. Basically, he's trying to jump the ship as to the federal court and lower federal court decision on those. He continuously tries to sway the arguments to sanctions with his seniority as to these types of claims. I want to remind the court it wasn't... The other two defendants did not move for motions for sanctions. You understand that a party can raise issues before us, as long as they were presented to the district court, whether the district court relied upon them and ruled upon them or not. You understand that, right? Yes, Your Honor. If you understand that, the idea about sanctions because they raised alternative grounds, do you have any case law that even hints that that's sanctionable? Your Honor, it's... They can argue it, Your Honor, if the lower court decided on those issues. That could not be further from the case law. So do you have... If I'm right. So do you have... It's a simple question. Do you have any cases that say that you can't raise something before us, assuming it was presented to the district court, if the district court didn't rule on it? Do you have any case that says that? I said what we put in our brief, Your Honor. Well, there isn't any case in your brief that says that. So the answer is no, right? I would have to defer to my brief, Your Honor. All right. Thank you. The related question would be, can he be sanctioned for filing a sanctions motion against someone else's sanctions motion when their sanctions motion is granted? Can that substitute a sanctions for filing a frivolous sanctions motion? We would appeal, Your Honor, within filing a frivolous sanctions motion. What he was doing is that he knows the lower court has not ruled on that sanctions motion yet, and he continues to argue this. And he continues to argue whether it's about lies. He doesn't argue that. The motion before the district court for sanctions deals with conduct before the district court. The motion for sanctions in the Court of Appeals deals with sanctions for what's happened in this court. Now, he had to tell us what the background was in order to request sanctions in this court. But it's two different forms of relief that are being sought. So what on earth is sanctionable about that? Well, Your Honor, because he's arguing things that the court never really decided upon. He's continuing his arguments. Well, that's back to the first argument. Yes. But he's continuing to make those arguments when the court hasn't decided on them. And he's basically making these arguments at this level as if the lower court has decided on them. This is why we should be sanctioned because we continue to do our arguments on appeal. He feels that he's entitled to sanctions because of that. Do you agree if you don't have any cases that say what you say, it's at least arguably sanctionable? Well, I don't know about that, Your Honor. I don't know about that, Your Honor. Okay. Thank you. I think our belief speaks for itself, Your Honor. I've never brought a federalist case in my 25 years, Your Honor. I've been a former civil rights commissioner appointed by the governor of the state of Michigan. I'm a civil rights attorney, Your Honor. And I don't appreciate his insults and his attacks on me personally. We've said that where she's afraid, not only was he afraid, they want to go after his attorneys. They want to go after his attorneys, Your Honor. Why are you wasting your five minutes to talk about the sanctions motion? I think I can speak just for myself. I don't appreciate either of you on all of the sanctions quibbling. I don't want to bring it up, Your Honor. Are you doing this for 25 years or not? I don't want to bring it up. He's the one that continuously brings it up. All right. And he's threatening. We use that as an exhibit. They continue to threaten us from day one. That's what they do. Imagine what they would do to work worship. They threaten their own attorneys for being a civil rights attorney and taking action to protect an individual that's been 32 years and seven months in jail because of their conduct. But yet they want to flip the script and put it on our client as he was supposed to do something. What was he supposed to do? Who is he supposed to call? It's basically the Justice Department. It's the FBI. It's the Detroit, the AUSAs. They all conspired against him because they know this would have been blown up in the community. They would have lost their jobs. That's why they kept his mouth shut. They want to make sure he always stays in jail for the rest of his life. And then the idea that the lower court, Your Honor, basically decided this on equitable estoppel as opposed to equitable tolling. Again, she asked me what did they actually, each individual, do. They don't have to do it. Normally, actually, when somebody does something and wants to put a hit on you, for instance, they don't come out and tell you, on Tuesday morning at 9 o'clock I'm going to kill you. They don't tell you anything. Just order the hit. They don't have to say anything. And I think the court in Davis and the Second Circuit has understood that. They don't have to say anything. Just so you understand, what we're trying to wrestle with is you've got a bunch of defendants, and now it seems to me in your argument you've expanded it to include everybody in the universe in law enforcement. So if we just go back to the people you sued, all we were asking you is do you spell out what each individual did, not lumping them together as a group. Your Honor, absolutely. We listed it. And you say that's in the complaint. Absolutely. The complaint is extensive. I'll look at the complaint if that's where you say you did it. It's exactly what each defendant did, when they did it, and thereafter, each one of them, Your Honor, in detail. Why did the district court ask you all these questions about spelling out who did what? Because I don't think she understood the equitable estoppel from equitable tolling, Your Honor. She applied equitable estoppel as opposed to equitable tolling. Equitable estoppel does not require, equitable tolling does not require the defendant to say anything. In addition, it says it's basically if they acted to retaliate or the fear or the influence by these individuals. We're arguing the influence. These individuals had the influence. We know that because they would promise him one thing, then they would send a letter retracting what they were promising him. They promised him that they would not expose all his testimony about the gangs that would put his life in danger. They did that. They promised him that they would help him at the parole hearing. They refused to do that. And counsel says, oh, no, that we are somehow misrepresenting. They didn't do it. Grohman didn't go and testify. What he did, he was subpoenaed. They had to force him to come. And even when he came, he still didn't say that Richard Wershe was an informant for the feds in the city of Detroit. Still didn't say any of that. Didn't help him. They were forced to come to court. They had to subpoena them to come to court. When somebody is supposed to be telling you, I'll do everything in my power to the words that you sent to the walls, and they didn't do any of that. I know you're out of time. One argument below, wherein it's suggested that your client might have the argument that he didn't file timely because he was the victim of bad legal advice, and the argument is that that's a legally cognizable basis for equitable tolling. Are you still advancing that argument, or what's your current status with respect to that argument? Yes, Your Honor. That's another mistake the lawyer said. He has not put forward any reason why he didn't bring it earlier. In fact, we have two affidavits basically attached, three affidavits attached that were supposed to be considered on the 12B6 motion. And we are advancing that. And I want to make very clear to the court, yes, his attorneys did tell him he had one year. Originally, that was all back in the day up to 1994 after you get out. But the fact is they told him that. He relied on them. They told him, basically, you'll spend the rest of your life in jail here. Possibly you'll get killed if you go after them now. So he did say that. But I also say to the court, even if they had not told him that, even had they not told him, he was still not enabled. He was too afraid of the consequences that would happen to him if he was bringing it up earlier before he got out. But there's clear affidavits attached to that, part of the pleadings that the court should have considered as an issue of fact as to that. So what do you do with all the cases we have that say that attorneys' mistakes are not grounds for equitable tolling? Do we just disregard all those cases that we have? Well, I believe the one Supreme Court holding on Holland v. Florida, Your Honor, that was an attorney mistaken to his client. It was. It went up to the Supreme Court. They said that would rise to a level of misstatements. Let me ask it another way so you're clear. We can't disregard another panel opinion that's published unless there's an intervening Supreme Court case that basically says that it's wrong. So is that the argument you're making? Are you saying that we don't have the cases that we have? Or are you saying we should disregard them based on Holland? I don't think you should disregard them. I think you can incorporate them with the holdings of Holland v. Florida, Your Honor. That's what we're saying, that you can incorporate the two. Whether it be the five-factor test and the two-factor test, Holland v. Florida was an attorney's advice. And they said absolutely that could rise to a level of conduct that is above the normal standard to basically toll the statute of limitations. All right. You and I are certainly out of time. Yes, Your Honor. Thank you for your arguments. Thank both sides for the arguments. And the case is submitted, and you'll be hearing from us in the near term.